```
                    UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF MISSISSIPPI
                          ABERDEEN DIVISION


UNITED STATES OF AMERICA                    PLAINTIFF


VS.                                         NO. 1:19CR62


BRANDON PETTY                               DEFENDANT


                        SENTENCING HEARING


              BEFORE HONORABLE SHARION AYCOCK
              CHIEF UNITED STATES DISTRICT JUDGE


                       Oxford, Mississippi
                        January 28, 2020


APPEARANCES:


For the Government:   CLYDE McGEE, IV, Esquire
                      U.S. Attorney's Office
                      900 Jefferson Avenue
                      Oxford, MS  38655


For the Defendant:    M. SCOTT DAVIS, Esquire
                      Federal Public Defender's Office
                      1200 Jefferson Avenue, Suite 100
                      Oxford, MS  38655


Court Reporter:       PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
                      Federal Official Court Reporter
                      911 Jackson Avenue East
                      Oxford, MS  38655
```

(10:40 A.M.)

**THE COURT:** And you may call the case.

**COURTROOM DEPUTY:** The Court calls to order 1:19CR62, United States of America versus Brandon Petty. This is a sentencing hearing.

**THE COURT:** Thank you.

Representing the government today is Clyde McGee, Assistant United States Attorney, and Scott Davis represents the defendant. Gwen Steele is in our courtroom, and she is our probation officer.

So, Mr. Petty, you're here today for sentencing. You know that?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** On an earlier occasion, you entered a plea to Count 1 of the indictment. Do you recall entering that plea?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** So a presentence report has now been prepared, and have you had an opportunity to review the presentence report with Mr. Davis?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** Mr. Davis, any objections?

**MR. DAVIS:** No objections, Your Honor.

**THE COURT:** Mr. McGee, from the government, any objections?

1   **MR. McGEE:** No objection, Your Honor.

2   **THE COURT:** Thank you.

3   Mr. Petty, I have received some letters, and I did
4   pause a moment ago after they were handed to me to review
5   those, letters that have been sent by family -- well,
6   primarily, friends on your behalf.

7   So what I'm going to do is give you an opportunity to
8   speak, and then I will call upon the government, but I'll give
9   your lawyer the last word on your behalf, okay?

10  **THE DEFENDANT:** Yes, ma'am.

11  **THE COURT:** Do you have anything, sir, you'd like to
12  say?

13  **THE DEFENDANT:** Yes, ma'am. I'd like to apologize
14  for -- just as far as having to be here today on my behalf for
15  being in possession of firearms that I know that I'm not
16  supposed to have. From here on out, ma'am, you won't have to
17  worry about me possessing another firearm.

18  **THE COURT:** Yes, sir. Anything else?

19  **THE DEFENDANT:** No, ma'am.

20  **THE COURT:** Thank you.

21  Mr. McGee.

22  **MR. McGEE:** Your Honor, the government submits that a
23  guideline sentence would be appropriate. As the Court is
24  aware, Mr. Petty possessed a sawed-off shotgun and a pistol,
25  which he was walking down the street with those on his

1  possession -- or on his person, and he had been previously
2  convicted of armed robbery, so he obviously was a felon, thus
3  the underlying charge here. But with all of that said, again,
4  the government submits that a guideline sentence would be
5  appropriate.
6          **THE COURT:** Mr. Davis.
7          **MR. DAVIS:** Thank you, Your Honor.
8          We appreciate the Court's consideration of the
9  submitted materials, and, you know, frankly, the presentence
10 report lays out Mr. Petty's history pretty well. It's a little
11 bit of an uncommon one in some ways here.
12         Mr. Petty, when he was 18 years old, was at a friend's
13 house, as I understand it, and a pizza delivery guy delivered
14 some pizza, and his friend basically attacked the guy with a
15 bottle, and Mr. Petty was there with him, of course. They
16 stole $40 and two pizzas. He was convicted of armed robbery at
17 age 18 as a result of that offense. And Mr. Petty has now
18 served an enormous amount of time in custody for it.
19         He originally was sentenced to three years with the
20 rest suspended. He served that three years. He was revoked
21 after some violations, which, as he remembers, it included a
22 couple of positive tests, and was given ten years, ten years of
23 that suspended time back, mandatory time, and he served all of
24 it. He spent his ages 21 to 31 in state custody, and he served
25 all of that time. He had been out less than a year when he was

1 caught with these firearms and arrested for that.

2 As a direct result of having those firearms, not only
3 is he charged and convicted in this case, he had his state
4 supervision revoked again -- this is the same supervision
5 that's related back to the robbery of the pizza delivery guy in
6 2004 -- and was given seven years of mandatory time.  He's
7 serving it right now.  He will be serving that time until 2026,
8 at which time he will be 40 years old and will have served 20
9 of his 22 adult years in prison.  He has been out for right
10 about two -- a little less than two years of his adult life
11 out.

12 And I'm not here to minimize his offenses, Your Honor.
13 I'm really not.  Mr. Petty has been -- has committed crimes and
14 has been convicted of them.  What I do want to emphasize is
15 that he has been punished awfully, awfully harshly for those
16 things.  It is not uncommon for us to see somebody with a much,
17 much longer record and facing, frankly, harsher charges than
18 felon in possession and not be looking at nearly as much --
19 nearly as high a percentage of his adult life spent in prison.

20 And that's not to say he shouldn't be punished here,
21 Your Honor.  There's no -- there's no good going to come from
22 Mr. Petty running around with a firearm.  He's not -- he's not
23 charged with -- or accused of doing anything or using them as
24 far as I know, but there's nothing good coming from it, and he
25 can't have it.  It's as simple as that.  And he understands

that, and that is something he is going to have to abide by and comply with going forward.

But considering the very lengthy amount of mandatory time that he is serving with the state, we're asking the Court to consider a sentence that's run concurrent with that time. Again, 40 years old is how old he's going to be when he gets out, and my understanding is he does not have any options for getting out earlier. Just like the last ten years that he -- was given back to him was mandatory, so is this seven.

So we ask the Court to take those things into account and consider a concurrent sentence. Thank you, Your Honor.

**THE COURT:** Let's address the state sentence. So give me those highlights again, Mr. Davis. How much time was he originally imposed?

**MR. DAVIS:** It was a 20-year sentence, but it was all suspended except for three initially. He served three. He was out for less than a year. He was violated -- his recollection is that was the result of a couple of positive drugs tests -- and he was given ten years of that suspended time. It was -- well, 17 years, but all but ten suspended. And then when he was arrested on this offense in late 2018, obviously before the disposition of this case, he was revoked again and given all of the remaining time back.

**THE COURT:** So I was inquiring about -- the term he is serving now --

1 **MR. DAVIS:** Right.

2 **THE COURT:** -- how much of that has he served?

3 **MR. DAVIS:** He has served right at a year. Just a
4 little over a year. This was imposed in January of last year.

5 **THE COURT:** I got you. Okay.

6 **MR. DAVIS:** About six years remaining.

7 And, Your Honor, before he was brought over into the
8 marshals' custody at least -- the marshals' custody on the writ
9 to face this charge, he was at Parchman. He was in Unit 29.
10 We all know what the situation is there, and that's likely
11 where he will go back unless we can kind of work something out
12 with the State to maybe have him serve his time in federal
13 custody. I don't really know what our options are along those
14 lines yet, but it's something we may -- that we may explore on
15 our end.

16 **THE COURT:** Okay. So, Ms. Steele -- I'm going to ask
17 you too, Mr. McGee.

18 So, Ms. Steele, is there anything prohibited about
19 running his state term concurrent?

20 **PROBATION OFFICER:** It's not prohibited.

21 **THE COURT:** What's the government's position?

22 **MR. McGEE:** Your Honor, the government would defer to
23 the discretion of the Court. I would like to note one thing in
24 addition to what Mr. Davis stated, that it was not just a
25 bottle that they used. They also used a handgun in the

1  underlying crime, and it just -- I mean, he was released.  He
2  can't abide by the Court's conditions.
3      **THE COURT:**  That bothers me more than anything else
4  about this case, about the presentence report.  Whatever you're
5  ordered to do, there's no significant history that's going to
6  indicate you're going to abide by it.  That's the problem.
7  That's the problem.
8      I mean, you're young.  You have unfortunate
9  circumstances.  I've read the sentencing memorandum, which I
10 should note has been filed by defense counsel, but you're not
11 compliant with anything ordered.
12     **MR. DAVIS:**  Your Honor, it's entirely accurate that he
13 hasn't been during these little bits of time out.  My hope for
14 Mr. Petty -- and I think I have a reason to feel optimistic.
15 Mr. Petty, despite everything he's been through, despite his
16 background, is a bright and personable guy, and I really do
17 think he's got the ability to do this.
18     It may very well be that the federal probation service
19 is the best friend he's ever had and the best thing that's ever
20 happened to him.  It's no knock on MDOC officials or whatever,
21 but he's been under their watch this entire time, and I think
22 the federal probation services may have access to resources
23 that can be really -- a real benefit for him.
24     **THE COURT:**  Okay.  Thank you.
25     **MR. DAVIS:**  Thank you, Your Honor.

        **THE COURT:** The Court adopts the presentence report without change.

        No count of conviction carries a mandatory minimum sentence.

        Mr. Petty's total offense level is 19, criminal history category of III. That is 37 to 46 months, supervised release range is 1 to 3 years under the guidelines, and a fine range of 10,000 up to 100,000. The fine is going to be waived due to your inability to pay.

        Mr. Petty, I'm going to remind you that this case carries -- this crime carries a term of up to 10 years, $250,000 fine, 3 years on supervised release, and requires you to pay a $100 special assessment.

        The sentence is within the guideline range, and the difference between the maximum and minimum of the guideline range does not exceed 24 months.

        Counselors, would you approach.

  (BENCH CONFERENCE.)

        **THE COURT:** Is there any merit to give him the most I can give him under the federal guideline sentence and run it concurrent? Does it help your situation about getting him out of state court and into the federal system?

        **MR. DAVIS:** He's going to be done with the State either way because this is a flat time seven years. This seven years expires this sentence. He's not going to have MDOC

when he is done with the state time, but he will, of course, as a result of this, have federal supervising.

**PROBATION OFFICER:** That is correct. I believe the maximum imposition for the guidelines here is still under the amount of time he has left to serve with MDOC, and you can certainly recommend that he be housed with the Bureau of Prisons during his term of federal custody. If you want to choose -- if you want it consecutively, he, of course, will serve that amount of time in the Bureau of Prisons.

**THE COURT:** I am going to run it consecutive. Okay. So I'll give him low end and run it consecutive.

(END OF BENCH CONFERENCE.)

**THE COURT:** Restitution does not apply in this case.

In imposing sentence, the Court has considered the advisory guideline range, the statutory penalties, and the sentencing factors enumerated in 18 U.S.C., Section 3553(a)(2), which set forth the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment; to afford adequate deterrence to criminal conduct; to protect the public; to provide the defendant with educational or vocational training, medical care, or other correctional treatment; and to avoid unwarranted sentencing disparities.

The Court finds no reason to depart from the sentence called for by the application of the guidelines inasmuch as the

facts as found are the kind contemplated by the sentencing commission.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that Brandon Petty is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 37 months on Count 1 of the superseding indictment.

The Court also instructs that the state term -- this shall run consecutive to the state term imposed for which this defendant still has some time to serve.

Upon being released from federal custody, he'll be placed on 3 years supervised release on Count 1 of the superseding indictment.

Now, Mr. Petty, there are some conditions that you must follow. There's a mandatory condition that you must cooperate in the collection of DNA as directed by your probation officer.

You shall comply with a number of standard conditions. I'm not going over those 16 or so with you today other than to tell you that those will be explained to you upon your release and it's as if they have been imposed by the Court today because they are being imposed. Understand?

**THE DEFENDANT:** Yes, ma'am.

**THE COURT:** Also, there are some special conditions. You shall submit your person, property, house, residence,

1 vehicle, papers, computers, other electronic communications or
2 data storage devices or media, as well as your office, to a
3 search conducted by a United States Probation Officer. That
4 search would only take place at a reasonable time and in a
5 reasonable manner and only if the probation officer had
6 reasonable suspicion to believe that you had violated a term or
7 a condition of your supervised release. It's your obligation
8 to tell whomever you live with that you're subject to this
9 search.

10 You shall participate in a program of testing and
11 treatment for substance abuse. I hope you will avail yourself
12 of that treatment while you are incarcerated, but certainly
13 while you're on post-release supervision, you will be subject
14 to testing and treatment. Those details will be worked out by
15 your probation officer, and you'll remain in that program as
16 long as needed.

17 You shall participate in a program of mental health
18 treatment. Again, I see from the presentence report as well as
19 the sentencing memorandum there is a great need. And you will
20 stay in the program on supervised release as long as your
21 probation officer deems it necessary.

22 No fine is being ordered due to your inability to pay,
23 but you are ordered to pay the $100 assessment fee. That is
24 due immediately to the clerk's office if it has not already
25 been paid.

1   At this time, Mr. Petty, I'm going to advise you of
2 your right to appeal.  You have the right to appeal any
3 sentence imposed illegally or as a result of a miscalculation
4 of the guidelines or a sentence that's outside the guideline
5 range or one that you find is plainly unreasonable.  If you're
6 unable to pay the court costs, the costs can be waived.  If
7 you're unable to pay for an attorney, one will be appointed.
8   Do you understand?
9   **THE DEFENDANT:**  Yes, ma'am.
10  **THE COURT:**  Do you have any questions?
11  **THE DEFENDANT:**  No, ma'am.
12  **THE COURT:**  Now -- okay.  Any counts to be dismissed?
13  **MR. McGEE:**  Yes, Your Honor.  The government would
14 move to dismiss Count 2 of the superseding indictment and
15 dismiss both counts of the original indictment.
16  **THE COURT:**  Thank you.  They shall be dismissed.
17  Mr. Davis, anything on behalf of your client?
18  **MR. DAVIS:**  No, Your Honor.
19  **THE COURT:**  You'll be remanded, sir, to the custody of
20 the Marshal Service where -- you will remain there until a
21 facility is designated.  Thank you.
22  (CONCLUDED AT 11:00 A.M.)
23
24
25

# **CERTIFICATE**

    I, Phyllis K. McLarty, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Mississippi, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing 13 pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

    Witness my hand, this 26th day of March, 2020.

/s/ Phyllis K. McLarty
PHYLLIS K. McLARTY, RMR, FCRR, CCR #1235
Federal Official Court Reporter